## SPENCER *v.* BALLOU

The defendant became the second indorser of a promissory note, made for the purpose of taking up three notes of same maker (who was insolvent), but indorsed by other parties, who had been charged by notice of non-payment —such notes being then held and owned by a bank which had discounted them. The note was delivered for that purpose to the plaintiff, who was an indorser upon the protested notes, and who gave no present consideration for it; *Held*, that the obligation of the maker to pay the prior note was sufficient consideration as to him, and supported the undertaking of the defendant as an accommodation indorser.

The holder, under such circumstances, can recover upon the note without having taken up the notes held by the bank.

The plaintiff at the maturity of the note, directed a notary public to give notice of its non-payment to the defendant and to omit giving notice to a prior indorser: *Held*, that evidence was inadmissible that such prior indorser would have been charged but for that direction. It belongs to each indorser to see for himself that prior indorsers are charged, and the holder owes no duty to them in that respect.

The case of *Kasson* v. *Smith* (8 *Wend.*, 437), considered and distinguished.

This court may refer to the evidence in the case for the purpose of giving a construction which will support the judgment to a finding of fact.

APPEAL from the Supreme Court. Action against the defendant as indorser of a promissory note, tried at the Oneida circuit, before Mr. Justice W. F. ALLEN, without a jury in October, 1853. The note was made by F. Hollister, for $1,398.71, dated May 22d, 1852, and payable three months thereafter, to the order of George C. Tallman, at the Oneida Bank, with interest, and was indorsed by Tallman and by the defendant. At the trial, the plaintiff proved the note, the demand of payment at its maturity by a notary public, and the protest and notice of the protest to the defendant. The plaintiff having rested, the defendant examined Hollister, the plaintiff and the notary as witnesses. An offer was made by the defendant to prove that it was the universal custom of the Oneida Bank and the notary, to give notice to all indorsers of paper left for collection or to be protested, and

that the notary would have notified the prior indorser in this case, but for the direction of the plaintiff to the contrary; which offer was overruled, and the defendant excepted to the decision. Tallman was sworn as a witness for the plaintiff, after which the defendant made several objections to a recovery by the plaintiff, embracing the points relied on upon this appeal. The court found the following facts upon the trial: 1. At the time of the making and indorsement of the note in suit, the Oneida Bank was the holder and owner of three notes, then past due, made by Hollister to the order of and indorsed by Rogers, Spencer & Co. The notes were for $452.45 each, dated in August, 1851, and payable three, four and five months after date; 2. The plaintiff became an indorser of the notes at the request and for the accommodation of the payees, who procured the notes to be discounted; 3. The indorsers of the notes had been duly charged and were liable thereon, and the notes have not been paid and are still held by the Oneida Bank; 4. The note in suit was made by Hollister and indorsed by Tallman, the payee, and the defendant, to take up the three notes then under protest, and was to be delivered to the plaintiff for that purpose; 5. Hollister had privately requested the defendant not to indorse a note for him for the purpose named, and he refused to indorse a note payable to his own order, but after some conversation consented to indorse a note as second indorser after Tallman; 6. The plaintiff was not present when the note was made and indorsed, and had no knowledge of the transaction until some time thereafter, when he was first informed of it by Hollister; 7. The note was delivered, when made and indorsed, to Tallman, the payee and first indorser, who left it at the Oneida Bank, where it remained until about the time it became due, when it was taken by him from the bank and delivered to the plaintiff; 8. The note was presented for payment at the request of the plaintiff, and by his direction the defendant only was charged as indorser; 9. The maker of the note was

Spencer *v.* Ballou.

insolvent at the time the note was made, and so continued to the time of the trial; 10. The plaintiff was informed for what purpose the note was made, and gave no present consideration for it; and the defendant indorsed the note without consideration and as an accommodation indorser, under the circumstances and for the purpose stated — the three notes under protest being the only consideration of the note in suit; 11. Tallman had not received a demand or notice of non-payment of the note, and was omitted to be charged as indorser by the direction of the plaintiff. The court decided as conclusions of law upon the facts: 1. The note was made and indorsed upon a sufficient consideration, and became a valid note in the hands of the plaintiff as against all the parties thereto, and the plaintiff is entitled to recover thereon, against the maker and indorsers thereof, without first having paid or taken up the three notes at the Oneida Bank; 2. The omission to charge Tallman as indorser in pursuance of the directions of the plaintiff, did not operate to discharge the defendant; the plaintiff owed no legal duty to the defendant in the premises.

Judgment was entered for the plaintiff on the decision, and exceptions to the decision were duly taken. Upon appeal by the defendant, the judgment was affirmed at a general term, in the fifth district, and the defendant has appealed to this court.

*S. Beardsley,* for the appellant.

*Francis Kernan,* for the respondant.

STRONG, J. The defendant insists that there was no consideration for his agreement as indorser, and that presents the first question for consideration.

The note was given to take up the three notes in the bank; at whose request, or whether at the request of either of the parties to it, or for whose benefit, is not expressly stated.

The just inference in regard to the persons to be benefited is, that it was designed to be for the mutual benefit of the holders and indorsers of the other notes. They were equally liable for the payment of those notes, and might equally resort to the maker for payment on taking them up. So far as appears, the maker had no motive to favor either more than the others. No purpose of preference to the plaintiff, in the application or use of the note in question, appears from the arrangement or direction that it was to be delivered to the plaintiff for the object intended by it. The plaintiff was constituted a trustee of the note for taking up the other notes, and thereby relieving the holders himself and the other indorsers from liability upon them. The holders and other indorsers with the plaintiff had a common interest in that object, and the provision for it, as before observed, was doubtless for their mutual benefit. They were the *cestuis que trust* of the trust committed to the plaintiff. In this view, the question of consideration of the note in controversy is the same, and must be decided in the same manner that it would be if the note had been delivered to the bank, or Rogers, Spencer & Co., for the same purpose for which it was delivered to the plaintiff. If the bank, supposing it had received the note to take up the others, could maintain an action upon it, so far as relates to a consideration, the objection of want of consideration in the present case is not well taken.

The principle is well settled that a subsisting legal obligation to do an act is a sufficient consideration for a promise to do it. (2 *Kent's Com.*, 465; *Story on Bills*, § 183; *Story on Prom. Notes*, §§ 185–195; *Warner* v. *Borge*, 15 *Johns.*, 233; *Jewett* v. *Warren*, 12 *Mass.*, 300; *Cook* v. *Bradley*, 7 *Conn.*, 57; *Mercer* v. *Lancaster*, 5 *Barr.*, 160; *Haseltine* v. *Guild*, 11 *N. H.*, 390; *Hicks* v. *Burhans*, 10 *Johns.*, 243; *Edwards* v. *Davis*, 16 *Johns.*, 283, *note*.) It is upon this principle that a note payable immediately, given for an account or other precedent simple contract debt, is

valid in respect to a consideration. It is not payment of the precedent debt, if it be the note of the debtor alone, nor if it be the note of a third person, without an express agreement to that effect, but that debt remains in force, and an action may be maintained upon it by relinquishing the note at the trial. The note is merely a.further security for the debt. (*Cole* v. *Sackett*, 1 *Hill*, 516 ; *Waydell* v. *Luer*, 3 *Denio*, 410.) The common counts in assumpsit, under the former system of pleading, proceeded on the same principle in alleging an indebtedness, and that afterwards, in consideration thereof, the defendant promised to pay. (1 *Chit. Pl.*, 298, 299.) A creditor may take as many notes from time to time as his debtor will give him for the same debt, and enforce either at his election. It makes no difference as to the consideration whether a note for a prior debt is given expressly as a collateral security, or is in terms or legal effect another principal security. The same consideration which will support a principal, will support a collateral undertaking. Regarding then, the note in question as having been given for the benefit of the bank, as holder of the three notes, and of the indorsers of those notes, it follows that the indebtedness of the maker of the latter notes was a sufficient consideration for his making the other note. And if the consideration was sufficient as to the maker, it also extends to and supports the undertaking of the defendant as an accommodation indorser. (*Story on Con.*, § 433 ; *Grant* v. *Ellicott*, 7 *Wend.*, 227 ; *Bank of Rutland* v. *Buck*, 5 *Wend.*, 66 ; *Story on Prom. Notes*, §§ 186–195.)

Another position of the defendant is, that the note could not be made available to the plaintiff otherwise than by applying it to the purpose of taking up the notes in the bank. That was the purpose for which the note was given; but the finding of facts is silent as to any particular mode of application to accomplish that object. The general intention in giving the note was to have the other notes taken up with it; but the particular manner of effecting

Spencer *v.* Ballou.

that intention by means of the note does not appear to have been deemed so important as to make it part of the arrangement. No provision having been made on that subject, it was competent for the plaintiff to adopt any reasonable mode of executing the general intention. If he had borrowed the money of a third person on the credit of this note, informing him at the time of the purpose for which this note was made, and had applied the money to pay and cancel the notes in the bank, no doubt could be entertained but that the security to the lender would be valid, and that he could enforce the note. So, if the plaintiff had advanced the money to pay and take up the notes in the bank, retaining this note for the advance, it is not perceived that the maker or the defendant would have any legal defence to the note. Nor is it perceived that any defence would exist, if the plaintiff had delivered the note to the bank, and they had kept it until it fell due, and then brought an action to collect the amount of it in satisfaction of all the notes, taking no measures in the meantime to enforce the three notes. That would be using the note in suit in substantial accordance with the purpose intended by it; and that in substance is the present case. The bank, whose trustee the plaintiff is as to this note, still holds the three notes, not having, so far as appears, taken any steps to collect them, and the plaintiff is proceeding to collect the note held by him in trust for the payment of the three notes. He is seeking to make it what it was designed to be, a means of payment of the notes in the bank, upon which notes no proceedings have been taken. If he is allowed to collect it, and applies the avails, as he will be under a legal obligation to do, to the payment and taking up of the three notes, without any prejudice to the maker and the defendant from the three notes in the meantime, the trust created will be substantially fulfilled, the plaintiff will have virtually, in substance and effect, taken up, with the note delivered to him in trust, the three notes in the bank. It was not made

a condition to a liability or an action upon the note, that the others should be taken up — a mere trust was created for taking up the three notes with this one, and the maker and the defendant can have no cause to complain at being required to pay this note, so long as the other notes are not allowed to prejudice them, and those notes must be taken up with the proceeds of the note in question.

If we look into the testimony — as undoubtedly we may do for the purpose of a construction of the finding that this note was made to take up the three notes and was to be delivered to the plaintiff for that purpose — we find by the testimony of Tallman, which is uncontradicted, that if the note should not be discounted, the plaintiff was to hold it until due, for the purpose of taking up those notes. From this testimony, it is clear that it was not made essential that the notes in bank should be taken up to render this note available, but that it was contemplated, in case those notes should not be taken up before this became due, the latter should be paid and the avails should be applied to the payment of the other notes. This is in harmony with the construction above given of the arrangement as found by the court at the trial.

The case of *Kasson* v. *Smith* (8 *Wend.*, 437), is materially different from this note. In the former, the note was delivered to be discounted at a particular bank, which bank refused to discount it; and it was given upon terms to be performed by the plaintiff, which were in no manner complied with by him.

The only remaining objection by the defendant to his being held liable in this suit, is founded upon the direction by the plaintiff to the notary public not to charge the prior indorser, and the exclusion of evidence that the prior indorser would have been charged but for that direction. The plaintiff was under no obligation to the defendant to charge the prior indorser, and might lawfully direct that notice of the protest be served only on the defendant. The holder of a

note is required to charge only the indorsers to whom he desires to look for payment, and it belongs to each indorser to see for himself that prior indorsers are duly fixed, if he would have a remedy over against them.

The judgment should be affirmed.

HARRIS, J. (Dissenting.) The note in question was made and indorsed for a special purpose. It was, as the fact was found upon the trial, " to take up the three notes, then under protest, and was to be delivered to the plaintiff *for that purpose.*" The three protested notes were held by the Oneida Bank, and have not been paid. The plaintiff was liable for the payment of those notes, although the maker testified on the trial that when the note in controversy was made he was ignorant of that fact. The fact is found that the plaintiff had indorsed the notes at the request and for the accommodation of the payees for whom they had been discounted.

The note being made for a special purpose it was placed in the hands of the plaintiff. It was to be used to take up the three protested notes. The plaintiff received it as an agent to perform that duty. It is true that, being an indorser upon the notes to be taken up, he had an interest in having this done, but he did not thereby acquire any other or greater interest in the new note than any other person would to whom it might have been delivered for the same purpose. If the note had been received by the bank, or if it had been negotiated elsewhere, and money raised upon it to take up the protested notes, it would then have become a valid security in the hands of the holder. But this was never done. The plaintiff, by merely having the note placed in his hands, acquired no legal interest in it. The note never took inception as a legal instrument. It never had existence as a valid security.

The case cannot, in my judgment, be distinguished from that of *Kasson* v *Smith* (8 *Wend.*, 437). If there is any

Spencer *v.* Ballou.

difference between the two cases it is not in favor of the plaintiff in the present action, for in *Kasson* v. *Smith* the plaintiff was the accommodation indorser of the maker of the notes. In this case he was not. In that case the maker of the note, upon which the plaintiff was such accommodation indorser, had made a new note and procured it to be indorsed by Smith, the defendant in the action, and placed it in the hands of the plaintiff for the purpose of raising money upon it to pay the first note. Having failed to get it discounted, he retained it until it was due, when he had it protested and then brought his action against the indorser, claiming that he held the note as security for his indorsement. He failed in the action.

The learned judge who delivered the prevailing opinion in the Supreme Court, assenting to the soundness of the principle upon which the case of *Kasson* v. *Smith* was decided, has sought to subject this case to a different rule of law by introducing a fact which was not established upon the trial. The plaintiff, he says, "holds the note as an indemnity to himself against his liability as accommodation indorser on the three notes." If this were so, I should have no hesitation in pronouncing in favor of the plaintiff But in the statement of the facts, as they have been found by the judge who tried the action, no such fact appears. We learn there that the plaintiff was an accommodation ·indorser, but not for any of the parties to this note; that this note was made and was to be delivered to the plaintiff for the express purpose of taking up the other notes, and that the plaintiff, when he received the note, was informed for what purpose it was made. Not a word is to be found in support of the position upon which the case has been made to turn in the court below—that "the plaintiff was to hold the note as indemnity to himself."

It is true that Tallman, whose relation to this case is very peculiar, after stating that he was to deliver the note to the plaintiff to take up the protested notes, adds that "if the

note was not discounted, the plaintiff was to hold it until it was due, for the purpose of taking up the other notes." The fact that the maker of the note did not know that the plaintiff was an indorser upon the protested notes has already been noticed. It is worthy of remark, too, that the plaintiff himself, who was a witness upon the trial, does not pretend that there was any agreement that the note in question was to be held for his indemnity. All he says on the subject is, that the note was left with him to take up the protested notes. Under these circumstances, it is not surprising that the judge who tried the case has omitted to find the important fact, that the plaintiff "held this note as an indemnity to himself against his liability as accommodation indorser upon the three protested notes." And yet the whole scope of the argument upon which the recovery has been sustained embraces this element. Throughout the entire opinion of Mr. Justice HUBBARD it is assumed that the plaintiff was the accommodation indorser of the maker of the notes, and that "to provide for the payment of the indorsed notes, and to indemnify the plaintiff against his liability thereon," this note was made. As we have seen, no such fact has been found, nor do I think the testimony would have warranted the judge at the trial in finding such fact. The note wholly failed to accomplish the end for which it was made. It was never negotiated or transferred for any valuable consideration. In short, it never received an existence as a note.

I am therefore of opinion that the judgment should be reversed.

DENIO, J., also dissented; SELDEN, J., was absent.

Judgment affirmed