## Charles E. Roby *vs.* Bismarck National Bank.

Opinion filed June 9, 1894.

**Contract for Sale of Land—Lien of Vendor.**

> Where the purchase of real estate is evidenced by contract only, and the purchase price is not paid, and the vendor retains the legal title as security for the unpaid purchase price, he holds a lien upon the property by virtue of the contract, and not simply the vendor's lien that exists in equity where the vendor has parted with the legal title without payment.

**Mortgage of Homestead for Unpaid Purchase Money is Good Although Not Signed by the Husband.**

> Where realty thus purchased is used as a homestead, and subsequently, at the request of the purchaser, the vendor executes and delivers to the wife of such purchaser a warranty deed to the land, and the wife, at the same time, and as a part of the same transaction, executes and delivers to the vendor a mortgage on the land, to secure the unpaid purchase money, such mortgage is valid, although not signed by the husband.

**Mortgage Valid for Purchase Price Although Other Indebtedness Secured.**

> The fact that said mortgage also secures other indebtedness of the husband to the grantee in the mortgagee does not invalidate this mortgage so far as it secures the unpaid purchase money of the homestead.

Appeal from District Court, Morton County; *Winchester*, J.

Action by Charles E. Roby and others against the Bismarck National Bank and others. Judgment for defendants, and plaintiffs appeal.

Affirmed.

*E. C. Rice*, for appellants.

The mortgage in dispute was an invalid mortgage because not signed by the husband, and its record did not impart notice. *Higley* v. *Millard*, 45 Ia. 589. The fact that the vendor retains legal title as security for the unpaid purchase money will not operate to defeat the vendees claim of homestead in the property. *Stinson* v. *Richardson*, 44 Ia. 353; *Myrick* v. *Bill*, 37 N. W. Rep. 369, 5 Dak. 167. The mortgage was void. *Myrick* v. *Bill*, 5 Dak. 167; *Barton* v. *Drake*, 21 Minn. 299; *Conway* v. *Elgin*, 38 N. W. Rep. 370, 38 Minn. 469. A vendor of land who takes the vendee's

notes with security is presumed to have waived his vendors lien. *Kinney* v. *Ensiminger*, 10 So. Rep. 143.

*Louis Hanitch* and *F. V. Barnes*, for respondents.

The legal title retained by the vendors was a substantial security and in fact and in effect a mortgage to secure the payment of the notes given for the balance of the unpaid purchase price. Jones on Mortgages 217; and the assignment and transfer of the notes to the Weaver Lumber Co., carried with it the security. *Batesvilled Institute* v. *Kauffman*, 18 Wal. 151; *Payne* v. *Wilson*, 74 N. Y. 348; *Pattison* v. *Hull*, 9 Cow. 747, 13 Am. & Eng. Enc. L. 625; Comp. Laws, § § 4351, 3243; *Johnson* v. *Blodgett*, 5 Cow. 202; *Bolen* v. *Crosby*, 49 N. Y. 183; *Ladue* v. *R. R. Co.*, 13 Mich. 396; *Willis* v. *Farley*, 24 Cal. 497. The transfer of the legal title to Mrs. Mitchell and the execution and delivery of the mortgage by Mrs. Mitchell to the lumber company did not change the nature of the debt or destroy its superiority (to the extent of the purchase price involved) to the homestead right. *Pratt* v. *Topeka Bank*, 12 Kan. 570; *Greene* v. *Barnard*, 18 Kan. 522; *Carr* v. *Caldwell*, 10 Cal. 380; *Dillon* v. *Byrne*, 5 Cal. 455; *Swift* v. *Kraemer*, 13 Cal. 526; *Kraemer* v. *Revalk*, 8 Cal 75; *Austin* v. *Underwood*, 37 Ill. 441; *Chase* v. *Abbott*, 20 Ia. 154; *Keiser* v. *Lambeck*, 7 N. W. Rep. 519; *Jones* v. *Parker*, 51 Wis. 220. A mortgage for the purchase price was not intended to be invalidated by § 2451, Comp. Laws. *Riehl* v. *Bingenheimer*, 28 Wis. 84; *Ferguson* v. *Mason*, 60 Wis. 391. As against the vendor and his assignee the vendee does not acquire that title upon which the homestead right can attach until the purchase price is paid. *Farmer* v. *Simpson*, 6 Tex. 310; *Stone* v. *Darnly*, 20 Tex. 14; *Phelps* v. *Porter*, 40 Ga. 485; *New England J. Co.* v. *Merriam*, 2 Allen 271. The mortgage back and the giving the deed were parts of the same transaction. The mortgage was valid to the extent of the unpaid purchase price and the addition of the other indebtedness did not effect its validity. *Nichols* v. *Overacker*, 16 Kan. 54; *Sparger* v. *Compton*, 54 Ga. 355; *Barnes* v. *Gray*, 7 Ia. 25; *Christie* v. *Dyer*, 14

Ia. 438; *McCarty* v. *Brackenridge*, 20 S. W. Rep. 997; *Chopin* v. *Runte*, 44 N. W. Rep. 258.

BARTHOLOMEW, C. J.  The plaintiffs and appellants brought this action to foreclose a mortgage upon certain realty in the City of Mandan.  Thomas J. Mitchell and Sarah E. Mitchell, the grantors in said mortgage, and various other parties interested in said realty, including the Bismarck National Bank, were made defendants.  The bank alone made defense.  From the unquestioned findings of fact we learn that on and prior to July 8, 1881, the firm of C. S. Weaver & Co., owned the realty in question; that said firm was composed of C. S. Weaver and R. S. Munger, and the realty was held in the individual names of the said partners.  On said July 8, 1881, said firm entered into an agreement with said Thomas J. Mitchell to sell to him the said premises for an agreed price, only a small portion of which was paid at the time, and the balance was evidenced by interest bearing notes, executed by Thomas J. Mitchell to C. S. Weaver & Co.  To secure said notes, the legal title to said realty was retained by C. S. Weaver and R. S. Munger in trust for C. S. Weaver & Co.  At the time of said purchase, Thomas J. Mitchell and Sarah E. Mitchell were husband and wife, and in October, following, they, with their children, moved into a house located on said premises, and so continued to occupy the same as their homestead until some time in the year 1888.  That, in 1883, C. S. Weaver & Co., were succeeded by a corporation known as the "Weaver Lumber Company," to which all of the assets of the firm were duly transferred, including the said notes given by Thomas J. Mitchell as the purchase price for said realty.  On December 4, 1884, the said Weaver Lumber Company, at the request of Thomas J. Mitchell, procured from C. S. Weaver, and R. S. Munger, a warranty deed for said premises, running to said Sarah E. Mitchell, which deed was duly delivered to the grantee; and at the same time, and as a part of the same transaction, the said Sarah E. Mitchell executed and delivered to said lumber company a mortgage on said premises, to secure a note then and there given by Thomas J.

and Sarah E. Mitchell to said lumber company, and which said note included the balance then due on the purchase money notes and certain other advances then made by the lumber company to Thomas J. Mitchell. This mortgage was signed by Sarah E. Mitchell only. Both the deed and the mortgage were duly recorded. In 1886 the lumber company foreclosed this mortgage by advertisement, and procured a sheriff's certificate of sale; and, being largely indebted to the defendant the Bismarck National Bank, the lumber company assigned said certificate to said bank as partial security for said indebtedness. On July 19th, 1888, the bank procured a sheriff's deed upon said certificate, and on the same day the Mitchells surrendered possession of the premises to the bank, and it has at all times since been in possession. In March, 1885, and after the mortgage to the lumber company was of record, Thomas J. and Sarah E. Mitchell executed and delivered to plaintiffs a mortgage upon the same homestead property, to secure a valid indebtedness, and the mortgage contained a covenant that the premises were free of all incumbrances except such as appeared of record. It was to foreclose this mortgage that this action was brought. On these facts the trial court held that the mortgage executed by the wife alone upon the homestead premises constituted a valid lien to the extent that such mortgage secured the purchase price for said premises, and no further, and gave plaintiffs and the Mitchells 90 days in which to redeem from this sale under said mortgage, by paying the balance of the purchase price, with accumulated interest, less the net rent received by the bank. No such redemption having been made within the time granted, on motion final decree was entered in favor of the defendant the Bismarck National Bank, in accordance with the announced conclusions of law, and from that decree this appeal is taken.

The appellants assign and argue but one error, which is thus stated by counsel. "The evidence and pleadings show said lot four [the premises in question] to have been a homestead, and the mortgage under which the bank claims was not jointly

executed by Sarah E. Mitchell and Thomas J. Mitchell, was void, and in it the bank had no equity as against plaintiff's claim." We do not think this assignment is good. It is true that the homestead rights will attach to land held under a contract of purchase. It attaches to the purchaser's equity in the land, whatever that may be.. *Myrick* v. *Bill*, 5 Dak. 167, 37 N. W. 369, and cases cited. But there are certain burdens which adhere to the homestead as effectively as to nonhomestead property. Where a sale of land is evidenced by a contract only, and the purchase price has not been paid, and the vendor retains the legal title, the parties occupy substantially the position of mortgagor and mortgagee. The vendor has a lien for his purchase money by virtue of his contract, and a lien which the vendee cannot, by conveyance or otherwise, affect or impair, and which can be extinguished only by payment of the purchase money (see Jones, Liens, § 1107 *et seq.*, where the authorities are fully cited;) and necessarily this is not controlled by the use to which the property is applied. If used as a homestead, no one would contend that the vendor could be compelled to execute a deed without full payment, and look to the other property of the vendee for his purchase price, even in the absence of that statutory provision (§ 2453, Comp. Laws) making the homestead liable for any debt created for the purchase thereof. Such a vendor is not required to rely upon the technical vendor's lien, which is a creature of equity, and exists where the vendor has parted with the legal title, and may be destroyed at any time by a conveyance by the vendee. He has a more substantial and indestructible lien, created by contract, and of which all the world must take notice. Such was the lien held by C. S. Weaver & Co., upon the property in controversy after the contract of sale to Thomas J. Mitchell, in 1881, was made, and the notes for the purchase money received. On familiar principles, the subsequent transfer of all the assets of the firm of C. S. Weaver & Co., to the Weaver Lumber Company, including the purchase money notes, carried with it the security held by C. S. Weaver & Co., for the payment of such

notes. It is clear that down to December 4, 1884, the Weaver
Lumber Company held a valid lien upon the property in contro-
versy as security for the payment of the purchase money, good as
against plaintiffs and all the world. On that date, the lumber
company, at the request of Thomas J. Mitchell, caused to be
delivered to Sarah E. Mithell, his wife, a warranty deed for the
premises. At the same time, and as part of the same transaction,
Sarah E. Mitchell executed and delivered to the Weaver Lumber
Company a mortgage upon said premises, to secure a promissory
note then and there executed by Thomas J. Mitchell and Sarah
E. Mitchell, to said lumber company, and which note included
the balance due on the purchase money notes and other indebt-
edness of Thomas J. Mitchell to the lumber company. It is
claimed that, because this mortgage was not signed by Thomas
J. Mitchell, it was absolutely void, and constituted no security,
even as to the purchase money. The statute of Dakota Territory
then in force reads as follows: "A conveyance or incumbrance
by the owner of such homestead shall be of no validity unless the
husband and wife, if the owner is married and both husband and
wife are residents of the territory, concur in and sign the same
joint instrument." The homestead estate is created for the
benefit of the family. The section above quoted is in furtherance
of the same purpose, and for the accomplishment of its object
must have a liberal construction. Nothing must be permitted
under that statute which would add a burden to the homestead or
curtail its enjoyment. But the execution of the deed and mort-
gage were in law simultaneous acts. In not one instant of time
prior to the execution of the mortgage was that property released
from the contract lien for the unpaid purchase money. The
execution of the deed and mortgage changed the form, but in no
manner the substance. No additional burden was cast upon the
homestead by holding the mortgage valid to the extent of the
unpaid purchase money. The purpose of the homestead law was
in no manner hindered. The giving of the mortgage was not

an incumbrance of the homestead. The incumbrance existed prior to the execution of the mortgage. There was never any homestead exemption as against that purchase money, not only by reason of the contractual relations, but also by reason of the express language of § 2453, which declares that the homestead may be sold for any debt created for the purchase price thereof. Under these circumstances, it has been repeatedly held, under statutes against alienation and incumbrance either identical with or substantially like ours, that a mortgage of the homestead to secure the purchase price money executed by the fee owner need not be signed by the husband or wife of such party. *Christy* v. *Dyer*, 14 Iowa, 438; *Hopper* v. *Parkinson*, 5 Nev. 233; *Amphlett* v. *Hibbard*, 29 Mich. 298; *Austin* v. *Underwood*, 37 Ill. 439; *Lasson* v. *Vance*, 8 Cal. 271; *Carr* v. *Caldwell*, 10 Cal. 380; *Nichols* v. *Overacker*, 16 Kan. 54; *Andrews* v. *Alcorn*, 13 Kan. 351. And, where such mortgage is given in part to secure indebtedness other than the purchase money, it is still held a valid lien to the extent of the purchase money, but void as to the residue. *Pratt* v. *Topeka Bank*, 12 Kan. 570, (as explained in *Greeno* v. *Barnard*, 18 Kan. 522;) *Dillon* v. *Byrne*, 5 Cal. 455. And see, also, *Swift* v. *Kraemer*, 13 Cal. 526.

The mortgage executed by Sarah E. Mitchell to the Weaver Lumber Company constituted a valid lien between the parties to the extent that it secured the purchase money of the mortgaged property. It was properly executed and of record, and appellants were bound to take notice of it. In the mortgage which they received the property was declared free of all incumbrances, "except such as now appear of record thereon." Their attention was thus expressly drawn to the record, and they were informed that their grantors considered the property already incumbered. They could not ignore the record. It is only where a duly executed and recorded conveyance is absoutely void that the record fails to give constructive notice, and in such case neither constructive nor actual notice could aid the void instrument. Appellants found of record an incumbrance which might or might

not be void. The record did not disclose. The possession of the Mitchells might indicate that it was void, but that possession was not conclusive against a prior grantee. It worked no estoppel upon him. The decisive facts rested in parol. Appellants had that notice which required them to investigate the facts. Had they done so, they would have learned that the prior mortgage was in part valid. Having failed to do so, they must bear the consequences. *Swift* v. *Kraemer, supra,* is exactly in point. The case of *Higley* v. *Millard,* 45 Iowa, 586, upon which appellants confidently rely, is clearly distinguishable. Under the Iowa statute, the homestead was not exempt from sale under execution for a debt that existed prior to the acquisition of the homestead. The husband undertook to mortgage the homestead to secure such a debt. The debt was no lien upon the homestead until reduced to judgment. Until that occurred, the homestead might be alienated free from any lien or liability for such claim. Hence the husband sought to throw upon the homestead an additional burden, which curtailed the homestead estate. This the court properly held was within the inhibition, and that the mortgage was absolutely void, and its record gave no constructive notice. The same principle runs through *Chopin* v. *Runte,* 75 Wis. 361, 44 N. W. 258. But those cases, for reasons already stated, are not in point here.

The decree of the District Court is affirmed. All concur.